UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| CHARLES HOBBS and ELIZABETH HOBBS, | : | Hon. Joseph H. Rodriguez |
|---|---|---|
| Plaintiffs, | : | Civil Action No. 17-3673 |
| v. | : | OPINION |
| US COASTAL INSURANCE COMPANY, et al., | : | |
| Defendants. | : | |

This matter is before the Court on Defendants' motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). The Court has considered the submissions of the parties and heard oral argument on May 16, 2018. For the reasons placed on the record that day, as well as those articulated below, the motion will be granted.

## Background

In this breach of contract action, Plaintiffs Charles and Elizabeth Hobbs filed a Complaint on May 23, 2017 claiming that Defendants' refusal to properly adjust a homeowners' insurance policy constitutes a breach of contract and bad faith.

Defendant US Coastal Insurance Company is administered by Defendant Cabrillo Coastal General Insurance Agency, LLC. US Coastal issued a policy of insurance ("the Policy") covering Plaintiffs' second home at 116 Cedarville Avenue, Villas, New Jersey ("the Property").

1

On or about September 29, 2016, Plaintiffs discovered that a leaky valve on the hot water heater caused extensive water damage and mold growth in the crawlspace of the Property. On or about October 11, 2016, a third-party adjuster estimated that the Property had sustained $8,654 in damage as a result of the water leak and an additional $66,415 in damage as a result of the mold growth. US Coastal paid Plaintiffs $8,654 for the water damage but only $10,000 for the mold damage, citing the "Limited Mold Coverage" provision of the Policy.

Plaintiffs complain that Defendants breached their contract and acted in bad faith by failing to pay benefits due and owing under the Policy because the mold was a consequence of water damage caused by the water heater's failure. Defendants seek dismissal of the Complaint, arguing that the $10,000 Mold Sublimit in the Policy applies to the mold damage at the Property.

Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss "for failure to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v.</u>

Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." Connelly v. Lane Const. Corp., 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. Fowler v. UFMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) ("Iqbal ... provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). The Court "must accept all of the complaint's well-pleaded facts as true." Fowler, 578 F.3d at 210. Restatements of the elements of a claim, however, are legal conclusions and, therefore, not entitled to a presumption of truth. Bztrtch v. Mutberg Factors, Inc., 662 F.3d 212, 224 (3d Cir. 2011).

## Discussion

Under New Jersey law, a breach of contract claim requires the following: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007).

Next, New Jersey law establishes a general duty of good faith and fair dealing in every contract as well as duties specific to insurers. "[A]n insurance company owes a duty of good faith to its insured in processing a first-party claim," but no liability arises if a decision concerning a claim is "fairly debatable." Pickett v. Lloyd's, 621 A.2d 445, 450, 453-54 (N.J. 1993) (internal quotation marks omitted). A claimant who cannot establish a substantive claim that the policy was breached, however, cannot prevail on a claim for an insurer's alleged bad faith refusal to pay the claim. Id. at 454.

New Jersey has well-settled principles of insurance contract interpretation:

> The principles of insurance contract interpretation are well settled: (1) the interpretation of an insurance contract is a question of law, (2) when interpreting an insurance contract, the basic rule is to determine the intention of the parties from the language of the policy, giving effect to all parts so as to give a reasonable meaning to the terms, (3) when the terms of the contract are clear and ambiguous, the court must enforce the contract as it is written, and the court cannot make a better contract for the parties than the one that they themselves agreed to, (4) where an ambiguity exists, it must be resolved against the insurer, (5) if the controlling language of the policy will support two meanings, one favorable to the insurer and one favorable to the insured, the interpretation supporting coverage will be applied, but (6) an insurance policy is not ambiguous merely because two conflicting interpretations have been offered by the litigants, and a genuine ambiguity exists when the 'phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage.

State Nat. Ins. Co. v. Cty. of Camden, 10 F. Supp. 3d 568, 574-75 (D.N.J. 2014) (citing Simonetti v. Selective Ins. Co., 859 A.2d 694 (N.J. Super Ct. App. Div. 2004)).

Here, US Coastal Policy Number NJD1001528 insured Plaintiffs from May 12, 2016 to May 12, 2017, providing coverage for loss at the Property with a limit of liability for the dwelling of $150,000, subject to certain exclusions. Specifically, the Declaration Page of the Policy issued 05/18/16 indicates Form DP 04 22 12/02 is subject to "Limited Mold Cov" of $10,000.

> Under the heading "GENERAL EXCLUSIONS," the Policy states:
>
> A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

Special Form DP 00 03 12 02, p. 8. By Endorsement DP 04 22 12 02[1], page 2, under the heading "GENERAL EXCLSUIONS":

> The following exclusion is added[2]:

---

[1] The Declaration Page of the Policy expressly incorporates this Endorsement by stating "POLICY SUBJECT TO THE FOLLOWING . . . ENDORSEMENTS . . . DP 04 22 12/02."

[2] Another Endorsement titled "Special Provisions – New Jersey" also added a general exclusion for windstorm or hail to paragraph A.10. (CCD 13 SP 01 14, p. 3.) The windstorm or hail exclusion does not remove or replace the

5

> **10. "Fungi", Wet Or Dry Rot, Or Bacteria**
>
> > "Fungi", Wet Or Dry Rot, Or Bacteria meaning, the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or bacteria
> >
> > This Exclusion does not apply:
> >
> > a. When "fungi", wet or dry rot, or bacteria results from fire or lightning; or
> >
> > b. To the extent coverage is provided for in Other Coverages, "Fungi", Wet or Dry Rot, Or Bacteria with respect to loss caused by a Peril Insured Against other than fire or lightning.
> >
> > Direct loss by a Peril Insured against resulting from "fungi", wet or dry rot, or bacteria is covered.
> >
> > (This is General Exclusion **A.10** in Forms **DP 00 01** and **DP 00 03**.)

The first page of Endorsement DP 04 22 12 02 is clear:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE

**FOR USE WITH ALL FORMS**

**SCHEDULE\***

---

mold exclusion quoted here, nor does it serve to make the policy language ambiguous. See Mid-Continent Cas. Co. v. Petroleum Sols., Inc., No. 4:09-0422, 2016 WL 5539895, at *43 and n.178 (S.D. Tex. Sept. 29, 2016) (noting that several amendments to policy provisions duplicated numbering of earlier provisions, to no moment; the language contained in the provisions was relevant regardless of overlap of numbers).

> These limits of liability apply to the total of all loss or costs payable under this endorsement, regardless of the number of claims made or the number of locations insured under this endorsement and listed in this Schedule.
>
> Property Coverage Limit of Liability for the Other Coverage "Fungi", Wet or Dry Rot, or Bacteria
>
> *Entries may be left blank if shown elsewhere in this policy for this coverage.

The Endorsement continues:

> With respect to the coverage provided under this endorsement, "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

Endorsement DP 04 22 12 02, p. 1.

Accordingly, regarding Plaintiffs' Property, water damage is a covered peril subject to an exclusion for loss caused by mold, with a rider giving back excluded mold coverage up to a $10,000 limit.

Plaintiffs argue that their loss was caused by water, not mold, and that Defendants therefore are obligated to pay for the entire amount of the loss. Plaintiffs point to the Complaint, which alleges that the mold growth was a result of the broken valve on the hot water heater, and argue that the mold is the "loss," rather than the "cause." See Simonetti, 859 A.2d at 699 (finding that mold damage caused by a covered event was covered under a policy that excluded losses caused by mold).

Detrimental to Plaintiffs' argument, however, is that the Policy at issue contains an anti-sequential provision applicable to the Policy's exclusions (not present in the Simonetti policy), which states, "We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss." (Special Form DP 00 03 12 02, p. 8.) See Assurance Co. of Am., Inc. v. Jay-Mar, Inc., 38 F. Supp. 2d 349, 354 (D.N.J. 1999) ("[T]here is no violation of public policy when parties to an insurance contract agree that there will be no coverage for loss due to sequential causes even where the first or the last cause is an included cause of loss.").

A combination of the anti-sequential clause and the mold exclusion,[3] supports the conclusion that the Policy provides coverage for damage from the broken valve but limits additional recovery to $10,000 for damage caused by mold that was caused by an undetected leak. Accordingly, in asserting that Defendants' application of the mold exclusion constituted breach of contract, Plaintiffs have failed to state a plausible claim, necessitating dismissal

---

[3] The insurer has met its burden of establishing application of the exclusion. See Hartford Acc. & Indem. Co. v. Aetna Life & Cas. Ins. Co., 483 A.2d 402, 408-09 (N.J. 1984).

of the First Count of the Complaint.

In addition, a claim for bad faith is not plausible because Defendants responded to Plaintiffs' claims, paid the amounts they determined were owed under the contract, and did not disregard any obligations or unreasonably fail to investigate or settle Plaintiffs' claims. See Badiali v. N.J. Mfrs. Ins. Grp., 107 A.3d 1281, 1287 (N.J. 2015). Because Defendants' position was, at a minimum, fairly debatable, the Second Count of the Complaint will be dismissed.

An appropriate Order shall issue.

Dated: May 23, 2018

/s/ Joseph H. Rodriguez
Hon. Joseph H. Rodriguez
U.S.D.J.